WRAY, Sheriff and Tax Collector, *v.* CLEVELAND STATE BANK.

(Division A. Jan. 7, 1924.)

[98 South.  442.  No. 23666.]

1. TAXATION.  *Unnecessary to file written objections at equalization meeting of board of supervisors; board of supervisors authorized to increase or diminish valuation of taxable property.*

It is not necessary, under section 6, chapter 323, Laws of 1920 (Hemingway's Supplement 1921, section 7769d1), in order to authorize the board of supervisors at its equalization meeting, provided for by said statute, to increase or decrease assessments of property for taxes, that written objections be filed by property owners, although that proceeding is permissible, but at such meeting the board of supervisors is authorized on its own initiative to increase or diminish the valuation of property appearing on the assessment rolls, in order that all property of the same value shall be assessed at its true value and for an equal amount.

2. TAXATION.  *Reduction by board of supervisors at equalization meeting to be questioned only by interested party on appeal to circuit court.*

Banking corporations under the laws of the state complied with section 4273, Code of 1906, as amended by chapter 193, Laws of 1920 (Hemingway's Supplement 1921, section 6907), by making out and delivering to the tax assessor on or before the 1st day of May of the current year written statements under oath, showing their assets and values as provided by said statute. The returns so made by the banks were adopted by the tax assessor in making up his tax rolls. At the equalization meeting of the board of supervisors, held in August by virtue of section 6 of chapter 323, Laws of 1920 (Hemingway's Supplement 1921, sec-

tion 7769d1), the board at the request of said banks materially reduced their assessments by erasures and interlineations, after which, at the conclusion of said equalization meeting, the board in one order approved the assessment rolls as so changed. The sheriff and tax collector sought by distraint to force said banks to pay 'taxes on said values as they appeared on the rolls before said reductions were made. *Held,* the action of the board at said equalization meeting in fixing the assessments of said banks was *res adjudicata,* and could not be questioned, except on direct appeal by a party in interest from such order of the board of supervisors to the circuit court.

APPEAL from chancery court of Bolivar county, Second District.

HON. C. L. LOMAX, Chancellor.

Suit by the Cleveland State Bank against E. H. Wray, Sheriff and Tax Collector. From a decree for plaintiff, defendant appeals. Affirmed.

*Charles Clark,* for appellant.

It is the position of the appellant (hereinafter called the sheriff, for convenience) that the amount claimed by him as damages on the taxes is most certainly collectible, if the tax is due and owing by appellees (hereinafter for convenience called the banks).

According to the record the time for the payment of the taxes had expired and the sheriff began proceedings to collect the taxes when he made demand upon the appellee banks to pay the remaining tax due by them together with damages thereon. So we take it, if the court please, that the rule of law is too well settled in this state to require us to burden the court with any citation of authorities upon the proposition that if the taxes were due to be paid, and had not been paid, when the sheriff demanded the payment of same, and collected the same, he was entitled to his damages therefor, and the fact that the banks tendered him the amount of the tax, less the damages provided for by law, does not affect his rights in

this case at all. In fact, although the banks set forth in their declaration or original bill, that they tendered him the amount of the tax, less the damages, thereby admitting that they were liable for the tax, they refused to pay the damages, not the tax, and this suit is really according to the allegations of the bill, a complaint against having to pay the damages which the law provides shall be paid to the sheriff.

Upon this point we call the court's attention to the following cases without further comment: *Miller* v. *Delta, etc., Land Co.,* 74 Miss. 110; *Anderson* v. *Hawkes,* 70 Miss. 639; also section 1882, Hemingway's Code, and the annotations thereto.

Although they set up in their bill the fact that they tendered the tax less the damages, they now seek in this suit to avoid the payment of any taxes at all, and claim that the sheriff had no right to demand anything of them, because of the action which they say and attempt to prove that the board took in August, 1921.

It is true, as was argued by the learned counsel for the banks below that the board of supervisors were a court of record, and that their judgments were final. We also contend for that same principle, and if, having entered a solemn order on their minutes, it was attempted to be changed by the individual members of the board, or any other person, although acting with their knowledge and consent, and even under their verbal directions, it could not be done, unless the requirements of the statute authorized such a change, and such requirements were strictly followed.

At its July meeting, 1921, the board gave notice that persons who desired to object might do so. The only method for objecting to the assessments, after they had been approved by the board by its order entered in July, and the only way in which they could be changed, was by the filing of written objections with the clerk of the board on or before the first Monday of August. It is not

contended that the banks made any request for a change, either in writing or verbally, but from the testimony in this case it seems that the board, without any order to that effect, instructed one Charles Jacobs to make a change in the assessment of each bank in the county by taking a certain definite percentage from each bank's assessment.

When the sheriff learned of these facts he called upon these appellee banks, who, as shown by the record, were not the only banks in the county, but were simply those banks who were trying to take advantage of this reduction, although other banks in the county had gone ahead and paid their taxes on their real assessments and had paid the damages due thereon, and made demand for the taxes due and the damages thereon. The banks say they were willing to pay the taxes, but not the damages, and now because the sheriff demanded the payment of his compensation for the collection of delinquent taxes they attempt to say that the state and county are not entitled to any taxes at all on that part of their capital and surplus which they have never yet paid on.

It is the contention of the appellant herein that the board of supervisors having approved the roll by the July order, and no written objections having been filed thereto, and no other order of the board having been made and entered on its minutes authorizing any change in the assessment roll, that the original assessment made and filed by the assessor based upon the statements rendered by the banks was the only valid legal assessment made against the appellee banks for the year 1921. That any attempted changes which were made in the roll, as shown by the testimony, were absolutely void, and that the action of the chancellor in making the injunction against the sheriff perpetual, enjoining him from collecting these taxes and the damages due thereon was error, and should be reversed, and an order entered in this court remanding this cause to the court below with in-

structions to dissolve the injunction and permit the sheriff to collect the taxes and damages, and that the finding of the chancellor that the assessment of the appellee banks was reduced by the board should be reversed, because they were never in fact reduced in any manner known to the law, and any attempt so to do, as shown by this record was illegal and absolutely as void as if the attempt had never been made. No order of the board having been made authorizing the change, there could be nothing from which any taxpayer might appeal if appeal was desired, and no change could be made after the board had approved the roll in July, except upon the written objection of the party, and the order of the board entered on its minute book, showing the action of the board taken upon such written objection, so that the right of appeal would not be denied to either the party making the objection, or to the taxpayers of the county who suffered thereby.

*Roberts & Hallam,* and *Shands, Elmore & Causey,* for appellees.

Appellant contended that the board of supervisors had already, at their July meeting, approved the roll as filed by the assessor, and that therefore it could not thereafter alter the assessments of these appellees. If that were true there would have been no necessity for the giving of notice to the taxpayers that the roll was on file subject to objection to any assessment at the August meeting, as required by section 5 of Chapter 323 of the Laws of 1920.

It would also be true that many of the provisions of section 6 of the same act would be meaningless if appellant's position was tenable. If, therefore, the order entered at the July meeting was in fact an approval of the roll, it was premature and *coram non judice.* It was certainly not a final approval under sections 4305 and 4306, Codes

of 1906 (sections 6939 and 6940, Hemingway's Code). It was the duty of the board of supervisors, after causing corrections to be made in the roll, to enter an order approving the assessments. This it did at the August meeting.

The board was in session at the proper time and place; it had power to examine and equalize the assessment, and to increase the valuation of the lands of appellant, if, in its judgment, they had been undervalued. The law points out no particular course of proceeding, and that resorted to was violative of no right of the taxpayer, who is fully protected by the right secured to him of appeal to the circuit court.

The board, then, had authority to reduce the appellees' assessments in the manner in which they were reduced, and the roll, as altered, and afterwards approved by the board and state tax commission, was the only real assessment of appellees' property, and thereupon became a final judgment. *M. & O. Railroad Company* v. *Wayne County,* 87 So. 139-140. This judgment could be reversed only by appeal, and no appeal was prosecuted.

In *Bank of Commerce* v. *Adams County,* 93 So. 442, the bank filed with the assessor a sworn statement which showed the book value of its capital stock, surplus, and undivided profits, and the assessor assessed the property of the bank on the valuations thus set forth. Afterwards the bank presented its petition to the board of supervisors alleging that the values set out in said statement were mere book values, and were far in excess of the real or market value of its assets, and praying that its assessment be reduced to accord with the real values. The petition was denied, and the bank appealed to the circuit court where the action of the board of supervisors was approved. On appeal to this court from the judgment of the latter court, this court, in reversing the judgment of the circuit court and reducing the bank's assessment, and

thereby necessarily holding that the sworn statement was not conclusive, said: "The requirement of the statute is not that fictitious undivided profits, surplus and accumulations shall be given in for assessment, but such only as constitutes, in the language of the statute 'part of the assets of the bank.' . . . What the appellant should have done was to have given in. the sum of its actual undivided profits, surplus and accumulations and not that which it is carrying on its books as such, but its failure to do so does not deprive it of the right to have its assessment reduced to the proper amount."

It is elemental law, that the judgment of the board of supervisors is a matter over which it had jurisdiction, as in the matter of equalizing assessments, cannot be collaterally attacked, and that it is not necessary that its minutes should show the evidence on which it acted. In *Hinton* v. *Perry County*, 84 Miss. 546, this court said: "Actions of the board (of supervisors) not involving jurisdictional power are conclusively right in this collateral litigation. Its jurisdiction being, in this matter, (removal of a county site), limited, the minutes must show that the jurisdictional facts were found to exist. This being done, there is no need ever to set forth the evidence in the judgment, and it is not controvertible, except on direct appeal."

Again, in *Darnell* v. *Johnson, Revenue Agent*, 109 Miss. 577, the court in holding that the judgment of the board of supervisors fixing the value of property for taxation could not be collaterally attacked, said: "The next question for us to answer is: Was the order of the board of supervisors, approving the assessment roll, a judicial determination of the true value of the land listed? If the land was listed, and the same was valued by the assessor and the board of supervisors, the judgment of the board is conclusive—is *res adjudicata*—unless some one entitled so to do appeals from the judgment of the board."

That the board of supervisors had full jurisdiction of the matter of equalizing assessments and approving the assessment rolls is apparent of course. The orders of the board spread on their minutes, show this; and the act itself makes the board's action in the premises conclusive. Section 7, chapter 323, Laws of 1920.

This brings us to the question as to whether the judgment of the board of supervisors as ratified by the state tax commission approving the assessment roll, is *res judicata* of the matters set up by the appellant. The chancellor held that it was, and he is amply sustained by the authorities. Before citing these authorities, we call the court's attention to the fact that under the Code of 1906 (section 4260) the blank personal assessment rolls which the auditor was required to furnish to the clerk of the board of supervisors, and in which assessments were to be made, contained no heading such as "Banks, Capital Stock, Surplus and Undivided Profits, Less Assessments of Real Estate," as in the case with column 34 of the form now in use. This section of the Code was amended by chapter 90 of the Laws of 1912 (section 6893, Hemingway's Code), and by that amendment the 34th column of the personal assessment roll was required to be headed thus: "Capital Stock, Surplus and Undivided Profits of Banks (less assessments of real estate)."

However, even under the law as it formerly stood, and under which the case of *Adams, Revenue Agent,* v. *Peoples' Bank of Biloxi,* 108 Miss. 346, was decided, it was held that even where there was no column on the assessment roll in which to assess capital stock of banks, etc., if the assessor wrote such heading on the assessment roll and then assessed the bank under that heading, the assessment was conclusive.

The assessment is *res judicata* even in a case where the assessment was fraudulently obtained, as where the pleadings admit that the taxpayer fraudulently undervalued his property when giving it in for taxation. This

was true in the case of *Robertson, Revenue Agent,* v. *Bank of Yazoo City, supra.*

The identical property here sought to be back-assessed (capital stock, surplus and undivided profits) was enumerated and valued on the assessment roll when passed on by the board of supervisors, and the correctness *vel non* of that valuation was a question which it was the duty of the board to then determine, and when determined it became final and conclusive against both the public and the appellees. Section 7, chapter 135, Laws of 1918; *Yazoo, etc., Investment Company* v. *Suddoth,* 70 Miss. 416, 12 So. 246; *State* v. *Simmons,* 70 Miss. 501, 12 So. 477; *Adams* v. *Bank,* 108 Miss. 346, 66 So. 407; *Darnell* v. *Johnson,* 109 Miss. 570, 68 So. 780. To hold otherwise would not only violate the statute, but would subject the citizen to the inconvenience and uncertainty of having his assessment reopened at any time in the future, within the period of limitation, upon the charge that he had intentionally undervalued his property when listing it with the assessor.

In the case at bar the charge is, not that the appellees undervalued their property when listing it for taxation, but that they properly valued their property, and that the board of supervisors, without rime or reason, reduced those valuations. The judgment of the board of supervisors whereby the assessment rolls were finally approved, was therefore *res judicata* and not subject to attack except by direct appeal.

ANDERSON, J., delivered the opinion of the court.

This is an appeal from the final decree of the chancery court of Bolivar county by E. H. Wray, sheriff and tax collector of said county, perpetually enjoining appellant at the suit of the appellees, five of the banks of the said county, from collecting by distraint against said banks additional taxes claimed by appellant for the state, coun-

134 Miss.—4.

ty, and levee district for the year 1921. The cause was tried on bill, answer, and proofs. A decree was rendered holding that appellees were not due the additional taxes claimed by appellant, and perpetually enjoining appellant from collecting the same.

Appellees complied with section 4273, Code of 1906, as amended by chapter 193, Laws of 1920 (Hemingway's Supplement 1921 section 6907), by making out and delivering to the assessor on or before the 1st day of May, 1921, the written statements under oath, showing their assets and values as provided by said statute. These returns of appellees showed the following under the extension column headed "Banks, capital stock, surplus and undivided profits, less assessments of real estate:" Cleveland State Bank, eighty thousand dollars; Bank of Merigold, thirty-seven thousand and one hundred dollars; Shelby Bank & Trust Company, one hundred eighteen thousand dollars; Citizens' Bank, one hundred fifty-two thousand and nine hundred dollars; and Planters' Bank of Shaw, forty thousand dollars. The tax assessor of Bolivar county in making out his assessment rolls adopted the valuations shown in appellees' returns. The board of supervisors published notice to taxpayers of its August equalization meeting, as required by section 5, chapter 323, Laws of 1920 (Hemingway's Supplement 1921, section 7769c1). At the equalization meeting in August representatives of appellees appeared before the board of supervisors, and orally requested that appellees' assessments be reduced. After a hearing and consideration, the board of supervisors had the tax assessor of the county, through a deputy he had present, to change on the assessment rolls in red ink said assessments as follows: Cleveland State Bank, from eighty thousand dollars to forty thousand dollars; Bank of Merigold, from thirty-seven thousand one hundred dollars to twelve thousand, five hundred dollars; Shelby Bank & Trust Company, from one hundred eighteen thousand, five hundred dollars

to seventy-three thousand nine hundred dollars; Citizens' Bank, from one hundred fifty-two thousand nine hundred dollars to ninety-three thousand six hundred dollars; and Planters' Bank from forty thousand dollars to twenty-five thousand dollars.

The board of supervisors, at the conclusion of said equalization meeting, passed an order on the minutes approving the assessment rolls as changed by interlineations and erasures. Appellees paid their state, county, and levee taxes for 1921 on the basis of their assessments so reduced by the board of supervisors. Thereafter appellant as tax collector, conceiving that the board of supervisors had no right under the law to reduce appellees' assessments, undertook to collect state, county, and levee taxes from each of appellees on the difference between said assessments as they were returned by appellees and first appeared on the assessment rolls and as they finally appeared on the rolls, after being reduced by the board of supervisors at its said equalization meeting. Appellant contends that the action of the board in making said reduction was illegal. On the other hand, appellees contend, and the court below so held, that no appeal having been prosecuted by any person interested from the action of the board of supervisors in reducing said assessments, its action in that respect was *res adjudicata,* and in this proceeding no inquiry could be made into whether said assessment ought to have been reduced or not. By section 6, chapter 323, Laws of 1920 (Hemingway's Supplement 1921, section 7769d1), the board of supervisors at its equalization meeting in August is required to examine the assessments rolls, and hear and determine all objections thereto, and furthermore is required to "*equalize the assessment and may increase or diminish the valuation of any property so that property of the same value shall be assessed for an equal sum.*" (Italics ours). And section 7 of said Act (Hemingway's Supplement 1921, section 7769e1), provides that all persons shall be concluded by

said assessment when approved at said equalization
meeting by the board of supervisors from questioning its
validity, except minors, etc.   After the assessment rolls
were approved at said equalization meeting, the clerk of
the board of supervisors, as required by the Tax Com-
mission Act, certified the recapitulation of the rolls to the
state tax commission, and thereafter on November 12,
1921, the state tax commission, by an order, approved the
said assessment rolls, and certified that fact back to the
clerk of the board of supervisors of Bolivar county, which
order of the tax commission the board of supervisors had
spread upon their minutes.   Thereafter the clerk of the
board of supervisors certified, as required by law, a copy
of said assessment rolls so corrected and approved to ap-
pellant as tax collector of said county.

We are of opinion that the decree of the chancery court
appealed from is sustained by *Darnell* v. *State Revenue
Agent*, 109 Miss. 570, 68 So. 780; and *Yazoo-Delta In-
vestment Co.* v. *Suddoth*, 70 Miss. 416, 12 So. 246.   In the
first case referred to it was held that, where the board of
supervisors had the question of valuation for taxes prop-
erly before it for decision and decided upon the value of
the property assessed, its judgment in that respect could
not be questioned, except by a direct appeal to the circuit
court.   It is not necessary, in order to authorize the board
of supervisors at its equalization meeting to increase or
decrease assessments, that written objections be filed.
That, of course, is permissible.   But at said meeting the
board of supervisors is authorized on its own initiative to
increase or diminish the assessments in order to get at
the true value and promote equality in values.   At said
equalization meeting there are two fundamental consid-
erations: First, the true value of the property assessed;
second equality of value.   All taxpayers of the county
have been given notice as required by the statute of that
meeting.   They know that under the law the board of su-
pervisors has the power and it is made its duty to in-

crease or diminish their assessments in order to arrive at the true value, and at the same time bring about equality of value. No other notice is required, unless an assessment is increased more than five hundred dollars, in which event personal notice by mail is required. Section 6, chapter 323, Laws of 1922 (Hemingway's Supplement 1921, section 7769d1). The board acts judicially at such meeting. Its judgment is final, and cannot be questioned, except by direct appeal.

In the latter case referred to (*Investment Co.* v. *Suddoth, supra*), it was held that it was not necessary for the minutes of the board of supervisors to show each specific change made in the assessment rolls at its equalization meeting. That after all corrections have been made on the rolls it is permissible for the board to approve the rolls by general order, and that any taxpayer failing to appeal from such an order is concluded by the assessment.

It follows from these views that the decree of the court below is correct.

*Affirmed.*